**L. H. WAGENER, INC., Appellant,**

v.

**R. Sam KRAGE and Joyce Krage d/b/a R. Sam Krage Company, and R. Sam Krage and Joyce Krage, as individuals, Appellees and Cross-Appellants.**

**No. 53758.**

Supreme Court of Iowa.

June 23, 1970.

Rehearing Denied Sept. 2, 1970.

William B. Perry, Storm Lake, for appellant.

O'Brien, Galvin & O'Brien, Sioux City, for appellees.

BECKER, Justice.

Plaintiff-corporation filed this action in equity for money due it under certain oral and written contracts made with R. Sam Krage. It also seeks to impose a lien for such sums on a home owned by defendant Joyce Krage and on a business property owned by defendant R. Sam Krage and Joyce Krage, husband and wife. Reference to defendant will hereafter refer to R. Sam Krage. His wife will be referred to by name.

The petition as against defendant Joyce Krage is based on two theories; Count I, Joyce Krage was a partner of her husband, and; Count II, defendants fraudulently used $20,652.48 from R. Sam Krage's business to build a home on real estate wholly owned by Joyce Krage.

Defendants deny Joyce Krage was a business partner of her husband; they deny she had entered into any contracts with plaintiff and ask that the petition be dismissed as to her. They admit plaintiff and defendant had entered into various contracts but deny any indebtedness to plaintiff and ask for an accounting. They also counterclaimed, but the counterclaim was dismissed and defendants do not appeal such action. We therefore ignore the counterclaim.

The court found defendant R. Sam Krage to be indebted to plaintiff in the amount of $39,396.25 and entered judgment for that amount. It further found defendant Joyce Krage was not a partner of her husband, was not involved in the contracts alluded to, found there was no fraud, refused to impose a lien on the home she owned in her own name and dismissed the case as to her.

The record shows defendant R. Sam Krage paid $20,652.48 for construction costs of a home which was wholly owned by his wife. Plaintiff's appeal contends this action was actually and constructively fraudulent, the trial court should have so decreed and we should correct this matter de novo.

Defendant R. Sam Krage cross-appeals. He contends the trial court allowed over $35,000 credits in plaintiff's accounting to which plaintiff was not entitled. We affirm on both appeals.

Defendant is a grading contractor who operates his business under a trade name

as a sole proprietorship. Plaintiff is a corporation, apparently substantially or wholly owned by L. H. Wagener. In 1965 and for about two years thereafter, plaintiff and defendant operated by oral agreements under which plaintiff furnished performance bonds and financing for various grading contracts. Plaintiff was to receive five percent commission on the gross amount of the contracts. The proceeds of the various contracts were assigned to plaintiff which received the proceeds thereof and exercised disbursement control.

This arrangement apparently worked satisfactorily as defendant successfully bid and completed 21 contracts at a gross overall profit of some $42,000. The 22nd and largest job was done under written contract. This was a $225,000 bid on the Van Buskirk job. It showed a loss variously estimated from $99,000 to $82,000 and was disasterous to the relationship.

The written contract for the Van Buskirk job followed the same general line as the oral contracts but also contained the following: "First Party (R. Sam Krage) * * * agrees to: Not pledge, sell, assign or transfer any of his assets during the performance of these contracts without express consent of Second Party, and hereby grants Second Party a lien against said property in an amount equal to the total uncompleted work on said Contracts, until said Contracts are fully performed."

The written contract was signed by plaintiff and defendant R. Sam Krage, but not by Joyce Krage. However, the application for performance bond was signed by both R. Sam Krage and Joyce Krage. Plaintiffs allege and defendants agree the work on the Van Buskirk job was performed between April 1966 and July 1967.

Plaintiff furnished several accountings for the moneys received from all of the contracts. Each accounting showed a different balance. Some were quite far apart. The account attached to the amended petition showed a balance due defendant in the sum of $24,431 before the Van Buskirk loss was applied. It showed a balance due plaintiff of $53,666 after the Van Buskirk loss was applied.

The parties aided the trial court by various stipulations and conferences which are not in the record but were acknowledged by the court in its decree. The court disallowed certain items and finally determined the total amount due plaintiff under the accounting was $39,396.25. Plaintiff does not complain as to the amount thus determined. Plaintiff limits its complaint to one well-defined area; i. e., failure to find actual or constructive fraud. We do not attempt to recompute the accounting from the unexplained numerous exhibits offered nor do we consider the allegations of partnership and joint venture which were decided adversely to plaintiff and not appealed.

The court failed to note the specific judgment lien against both the home of Joyce Krage and the business property owned by both. Again, the parties do not complain of the latter omission and we find it unnecessary to change the court's decision in this regard.

I. Plaintiff's appeal, divided into four parts, reduces itself to one complaint. The $20,652.48 shown to have been used from R. Sam Krage's business account to pay for the home, which was wholly owned by his wife Joyce, should have been declared a lien against that real estate because:

(1) The transfer was without consideration and with her knowledge and consent; (2) defendant was either insolvent at the time or the transfer made him was insolvent; (3) thus, Joyce Krage was guilty of actual or constructive fraud; and (4) the act was a transfer in fraud of creditors.

The trial court decided the case against Joyce Krage as follows:

"No satisfactory evidence was adduced that funds pledged by R. Sam Krage un-

der Par. 5(f) of the agreement of February 25, 1966, were diverted to the construction costs of the house erected on Parcel 1.

"There is ample evidence that funds totaling more than has actually been paid to the time of trial for construction of the residence located on the premises impleaded herein as Parcel 1 were secured by defendant, R. Sam Krage, from sources other than the plaintiff." Our analysis of the record confirms the conclusion.

The court did not discuss the additional rule now urged by plaintiff. Plaintiff relies on Commercial Savings Bank of Marion v. Balderston, (1935) 219 Iowa 1250, 1256, 260 N.W. 728:

"It is likewise the settled rule of law in this state that where the evidence shows that a conveyance of property is voluntary and without consideration, or is given for a grossly inadequate consideration, it is constructively and presumptively fraudulent as to existing creditors, and in such event the burden is upon the grantee to show that the grantor was solvent or had sufficient property remaining to pay his debts at the time of executing the conveyance. (Cases cited)." Cf. McCoy v. Martin, (1964) 257 Iowa 146, 131 N.W.2d 783, 784.

We are constrained to believe the foregoing rule was never brought to the attention of the trial court. If this be true plaintiff ordinarily could not rely on it here. The abbreviated record leaves us in doubt about the matter and defendant is silent on the question of whether the point was raised below. We therefore consider it.

The statement from Commercial Savings Bank of Marion v. Balderston, supra, is the rule. But plaintiff failed to bring itself within that rule. Plaintiff must first show it was an *existing creditor* at the time the transfer was made. The record does not so show.

Plaintiff's own accounting is offered on several exhibits. The amounts used on each exhibit vary substantially. But they are uniform on one point. The accounting for the 21 jobs (other than the Van Buskirk job) shows a credit balance in favor of defendant in a substantial amount. It is only when the loss on the Van Buskirk job is deducted that defendant becomes indebted to plaintiff. The record is silent as to when the Van Buskirk loss became apparent.

Just how the Van Buskirk loss occurred, why a $225,000 bid job shows an income to the contractor of over $420,000, the circumstances of the job settlement, or when it first became apparent there would be a loss is not shown in the record. Plaintiff had the figures to determine this matter and defendant denied any accurate knowledge of the state of the accounts. This is fortified by the large number of exhibits offered by plaintiff as accountings all of which were substantially (and some grossly) different.

In Knabe v. Kirchner, 228 Iowa 1156, 1171, 293 N.W. 433, we said: "The fact that there was a family relationship between the grantors and grantees is a matter for careful consideration and scrutiny but it is not, in itself, determinative of the issue of fraud. (Cases cited)."

In Tullis v. Tullis, 235 Iowa 428, 434, 16 N.W.2d 623, 626, we also said: "'Mere ground for suspicion does not make a case in favor of a creditor seeking to subject property conveyed to a third party to execution.'

"The appellants lay particular stress on the marital relationship of Rose Tullis and Frank Tullis. In regard to a somewhat similar situation we said in the case of Pike v. Coon, supra, 217 Iowa 1068, 1072, 252 N.W. 888, 890:

"'The facts in this class of cases are different in nearly every case, and each case must therefore be decided upon its own peculiar facts.'"

Considering the entire record as presented to us we are satisfied defendants adequately rebutted the presumption of fraud growing out of the transfer of assets to his wife and the essential elements of actual fraud were not shown. First, it is not clear that *plaintiff* was an existing creditor at the time the transfers were made; second, the loss which apparently accounts for defendant's insolvency, if any, may or may not have occurred prior to the building expenditures; third, defendant was able to show substantial earnings and borrowings of substantial sums in addition to the money advanced by plaintiff; i. e., the acts of a solvent businessman. In this regard see McCoy v. Martin, supra.

■ II. Defendant's cross-appeal is predicated on plaintiff's failure to properly show payment of four items allowed in the accounting. These items were: $3,200.50 for landscaping; $1,072.10 and $3,570.28, both from concrete products, and $31,171.35 for gas, oil and similar products purchased from D-X Oil Company.

Defendant does not contend the products were not received or that the amounts are wrong. He contends payment of these amounts by L. H. Wagener by personal note was insufficient to allow plaintiff-corporation to take credit for the settlement of the accounts.

The D-X account was in the name of both R. Sam Krage and L. H. Wagener, Inc. Plaintiff introduced a letter containing the following paragraph:

" 'We acknowledge receipt of your note in the amount of $48,798.06, which paid accounts involving you and R. Sam Krage as well as the Nicholson Construction Co. This note paid the accounts up to March 1, 1967. The following accounts were paid with your note:' "

We think defendant adequately showed defendant's obligation to D-X was fully paid as to defendant.

Similar evidence was not produced as to the first three items; i. e., that it was not shown that the creditor accepted the notes in full payment of the account. Cf. Orcutt v. Hanson, (Iowa, 1969) 163 N.W. 2d 914, 917. But the accounts had never been charged to defendant at all. We conclude it was adequately shown that as to defendant, the accounts were settled. The creditors never extended credit to defendant and accepted Wagener's note. They would be in no position now to make claim against defendant whether the note was taken in payment of L. H. Wagener, Inc.'s bill or not.·

Defendant's real claim is that plaintiff in its corporate capacity cannot take credit *for payment where the method of payment* was by personal note given by the principal owner. Inn Operations, Inc. v. River Hills Motor Inn Co., Iowa, 152 N.W.2d 808, 815 states:

"Generally one who has created a corporate entity will not be permitted to disregard it to gain an advantage, which under it would be lost." We adhere to the rule but find it does not apply here. Plaintiff-corporation, as a separate entity, could show the legitimate obligation of defendant was paid at the corporation's instance and request. In equity the corporation should have the benefit of such credits. This is the result of the trial court's ruling. We agree.

Stated otherwise, the corporation agreed to and did aid in defendant's financing. Part of this aid was to see that a large number of bills were paid. How it accomplished this or what its arrangements were with its principal owner were largely immaterial as long as defendant received the goods and was relieved of the debt. These last two factors were adequately shown. The rule followed in Inn Operations, Inc. v. River Hills Motor Inn Co., supra, is not applicable here.

As to both appeal and cross-appeal, this case is

Affirmed.

All Justices concur, except RAWLINGS, J., who takes no part.